Exhibit 4

# EDWARDS LAW

| JEFF EDWARDS | SCOTT MEDLOCK | DAVID JAMES | MIKE SINGLEY |
|---|---|---|---|
| Board Certified – Personal Injury Trial Law | Attorney at Law | Attorney at Law | Attorney at Law |
| Texas Board of Legal Specialization | scott@edwards-law.com | david@edwards-law.com | mike@edwards-law.com |
| jeff@edwards-law.com | | | |

**CONFIDENTIAL: ATTORNEY-CLASS MEMBER COMMUNICATION**

**VIA U.S. MAIL**

**August 12, 2019**

Debbie Hay
#263672
Pack I Unit
2400 Wallace Pack Rd
Navasota, TX 77868

Re:   *Cole v. Collier* Class Action

Dear Ms. Hay:

    Please see the enclosed policies that we received in response to a request for policies concerning transgender inmates. From these policies, it does not appear that TDCJ has, or intends to, open a "transgender unit" where you may be transferred. If you hear otherwise, please let us know and we will investigate further.

Sincerely,

Scott Medlock

Exhibit

A

AD.-03.22 -- Offender's Searches
(Rwz 12)



| | | |
|---|---|---|
| **TEXAS DEPARTMENT** | <u>**NUMBER:**</u> | **AD-03.22 (rev. 12)** |
| **OF** | <u>**DATE:**</u> | **June 17, 2019** |
| **CRIMINAL JUSTICE** | <u>**PAGE:**</u> | **1 of 4** |
| | <u>**SUPERSEDES:**</u> | **AD-03.22 (rev. 11)** <br> **August 16, 2016** |

# ADMINISTRATIVE DIRECTIVE

<u>**SUBJECT:**</u>     **OFFENDER SEARCHES**

<u>**AUTHORITY:**</u>     Tex. Gov't Code §§ 493.001, 493.006(b), 494.001, 494.002(a); BP-02.08, "Statement of Internal Controls"

Reference: 28 C.F.R. § 115.15(a), (c), (e), (f)

<u>**APPLICABILITY:**</u>     Correctional Institutions Division

<u>**POLICY:**</u>

The Texas Department of Criminal Justice conducts offender searches in order to maintain the safety and security of staff, offenders, property, and the public.

<u>**DEFINITIONS:**</u>

"Body Cavity Search" is the visual, manual, or instrumental inspection of an offender's body cavities, such as the anal or genital opening, performed by a medical practitioner.

"Dry Cell" is an area designated by the warden to house an offender where the environment is controlled and monitored, including the offender's access to other offenders and standard toilet fixtures.

"Dry Cell Isolation" is the separation of an offender to observe the offender in a dry cell by correctional staff in an effort to obtain and search the offender's bodily waste to determine whether the offender ingested contraband or otherwise concealed contraband within the offender's body.

"Exigent Circumstance" means a temporary and unforeseen circumstance that requires immediate action in order to address a threat to the security or institutional order of a facility.

"Intersex Offender" is a person whose sexual or reproductive anatomy or chromosomal pattern does not seem to fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as disorders of sex development.

"Strip Search" is the observation of an offender with all clothing removed to permit a total visual inspection of the offender's body. Clothing shall be searched while removed from the offender.

"Transgender Offender" is a person whose gender identity, such as internal sense of feeling male or female, is different from the offender's assigned sex at birth.

"Visual and Pat Search" is the act of visually inspecting and "patting" an offender by a searching employee. Offenders shall be required to remove headgear and outer protective clothing, which shall be visually and physically searched. This may include scanning by a device that does not require disrobing. A search of bags, books, and all other items being carried by the offender is included in this type of search.

## **PROCEDURES:**

Searches of all offenders shall be conducted in a professional and respectful manner and in the least intrusive manner as possible in accordance with training regarding conducting searches and security needs. No search of a transgender or intersex offender shall be conducted for the sole purpose of determining the offender's genital status. Constant supervision shall be maintained during and after a search of the offender to ensure the offender does not obtain or conceal contraband after the search.

I. Visual and Pat Searches

    A. Offenders shall be routinely searched using the visual and pat search technique in accordance with existing post orders and policies within the respective area of assignment.

    B. Female offenders shall be pat searched by female staff.

II. Strip Searches

At times it may be necessary to strip search offenders to ensure staff and offender safety and to detect the presence of contraband. Strip searches shall be used only when specifically directed by unit post orders, unit departmental policy, or when a supervisor believes there is reasonable suspicion to warrant such a search. Gender specific requirements are as follows:

    A. Female offenders shall be strip searched by a female correctional officer or trained female staff member. Female offenders shall not be strip searched in the visual presence of or by male staff.

    B.    Male offenders shall be strip searched by a male correctional officer or trained male staff member, except in exigent circumstances with prior approval from a security supervisor.

    C.    All cross-gender strip searches shall be documented by the security supervisor through the approving warden by way of IOC and filed in the unit Safe Prisons/PREA manager's office.

    D.    If, under ordinary circumstances, a female correctional officer is present in the vicinity of a male offender being strip searched, the female correctional officer's duty is solely to provide security. The female correctional officer shall not actively participate in the strip search. The female officer shall position herself where she does not see the offender's nude body.

III.    Body Cavity Searches and Dry Cell Isolation

When reasonable suspicion exists to believe an offender ingested or inserted contraband into a body cavity, and therefore visual, pat, and strip searches are insufficient to detect the contraband, the offender shall be subject to dry cell isolation.

    A.    Reasonable suspicion may be established by any of the following:

        1.    Confidential information from a reliable source;

        2.    Irregularities possibly indicating the presence of contraband in the pelvic or rectal area during a strip search;

        3.    Detection of contraband on the offender's visitor after physical contact with the offender;

        4.    Detection of contraband on the offender after physical contact with a visitor; or

        5.    Any other objective evidence indicating the offender has contraband concealed in a body cavity.

    B.    Once reasonable suspicion has been established, a security supervisor shall obtain authorization from the warden or designee to escort the offender to the medical department.

        1.    Visual body cavity searches shall be performed by medical practitioners.

        2.    A medical practitioner shall attempt to determine, through a complete physical examination, if the offender has ingested or concealed contraband

in the offender's body. If contraband is verified, the following steps shall be taken:

    a. The offender shall be provided an opportunity to voluntarily surrender the concealed contraband; or

    b. If the offender refuses to surrender the contraband voluntarily, medical staff shall determine whether the contraband can be eliminated through the natural waste process, and if so, the offender shall be isolated in a dry cell in accordance with SM-03.04, "Dry Cell Isolation Procedures."

    3. If the medical practitioner determines that elimination of contraband through the natural waste process in a dry cell is not possible, and failure to remove the contraband presents an imminent danger to the life of the offender, medical staff shall initiate removal of the contraband by the most appropriate method, as determined by the medical practitioner.

C. A body cavity search or contraband removal shall be considered a serious incident, shall be reported in accordance with AD-02.15, "Operations of the Emergency Action Center and Reporting Procedures for Serious or Unusual Incidents," and shall be fully documented, including the participants, reasonable suspicion, and results.

IV. Documenting Cross-Gender Searches

Cross-gender strip searches shall be documented by the security supervisor through the approving warden by way of IOC and filed in the unit Safe Prisons/PREA manager's office.

In exigent circumstances, such as a group disturbance, it may be necessary to conduct a mass search. It is acceptable to list each individual offender that was subject to a cross-gender search on the same IOC.

                                                   Bryan Collier
                                                   Executive Director

Exhibit

B

AD.—04.68 (rev. 6)



| | |
|---|---|
| TEXAS DEPARTMENT | **NUMBER:** AD-04.68 (rev. 6) |
| OF | **DATE:** January 11, 2016 |
| CRIMINAL JUSTICE | **PAGE:** 1 of 5 |
| | **SUPERSEDES:** AD-04.68 (rev. 5) May 10, 2002 |

# ADMINISTRATIVE DIRECTIVE

**SUBJECT:** OFFENDERS REQUIRING SINGLE-CELL HOUSING

**AUTHORITY:** Tex. Gov't Code §§ 493.001, 493.006(b), 494.001, 494.002(a), 501.113(b)

Reference: American Correctional Association Standard 4-4133

**APPLICABILITY:** Correctional Institutions Division, Private Facility Contract Monitoring/Oversight Division, and Health Services Division

## POLICY:

The Texas Department of Criminal Justice (TDCJ) shall establish guidelines for categorizing offenders who require single-cell housing due to vulnerability, medical or mental health problems, developmental disabilities, or other reasons related to offender health, safety, or security, in accordance with state law and TDCJ rules and regulations.

## PROCEDURES:

I. Offenders in Death Row Segregation

   Offenders in death row segregation shall be assigned to single-cell housing.

II. Offenders in Administrative Segregation

   In accordance with state law and the requirements of the TDCJ *Administrative Segregation Plan*, all offenders confined in administrative segregation shall be assigned to single-cell housing. The categories of administrative segregation include: security detention, prehearing detention, and temporary detention between consecutive terms of solitary confinement.

III. Offenders with Medical or Mental Health Problems or Developmental Disabilities

    A.    Offenders whose medical treatment plans indicate they shall be housed in a cell alone, and offenders assessed to have developmental disabilities pursuant to the *Developmental Disabilities Program* (DDP), shall be assigned to single-cell housing if their individual habitation plans indicate they should be housed in a cell alone.

    B.    Offenders with mental health problems, which includes all psychiatric inpatients and outpatients, shall be assigned to single-cell housing unless the Individual Treatment Plan (ITP) (medical) indicates multiple-cell housing. However, if the unit psychiatrist indicates multiple-cell housing, but the Unit Classification Committee (UCC) or State Classification Committee (SCC) determines single-cell housing is required for reasons of safety or security, a housing determination shall be made in accordance with Section III.C.

    C.    Treatment professionals' indications for single- or multiple-cell housing due to medical or mental health problems or developmental disabilities shall be recorded on the HSM-18, Health Summary for Classification form. Unit medical staff shall ensure that a current HSM-18 is on file for each offender in the computerized records and a copy is available to the unit classification office at all times. Offenders with medical or mental health problems, or developmental disabilities, shall be single-celled for reasons of security or safety, for example, due to vulnerability, when the need is determined by the UCC or SCC, and it is not in conflict with treatment professionals' housing indications. If the single-cell requirement is in conflict with the treatment professionals' housing indications, a final determination as to the appropriate housing assignment for the offender shall be made in accordance with Correctional Managed Health Care (CMHC) policy.

        1.    All matters of medical, dental, and psychiatric judgment are the sole responsibility of the unit physician, dentist, psychiatrist, or psychologist, respectively, in accordance with CMHC policy.

        2.    At the unit level, any policies or practices that contradict direct medical orders shall be addressed by the responsible health authority and the warden or designee. If the conflict cannot be resolved at the unit level, the responsible health authority shall immediately notify the Health Services Division director or designee. When there are direct conflicting orders from medical staff, the Health Services Division director has the final authority to amend or countermand the conflicting orders.

IV. Safekeeping Characteristics

    A.    In general, offenders in safekeeping are celled together and matched with respect to similar characteristics as outlined in Section IV.C. The determination to designate safekeeping offenders for single-cell housing is based upon the presence of the

characteristics as outlined in Section IV.C, compared to other safekeeping offenders showing the same characteristics. Safekeeping offenders for whom no appropriate cell partner can be found shall be assigned to single-cell housing until an appropriate cell partner is available.

Procedurally, there are two categories of safekeeping offenders that may be housed in single cells.

1. No Acceptable Cell Partners

    This category consists of safekeeping offenders for whom there are currently no acceptable cell partners; however, based on the type and nature of the characteristic, it is anticipated by the unit official making the housing assignment decision that the offender will shortly be matched with an acceptable cell partner. This category of offender shall not be designated for single-cell housing since it is anticipated that the offender will eventually be designated for multiple-cell housing.

2. Vulnerable Offenders

    This category of safekeeping offenders who may be designated for single-cell housing is based on the assessment of the type and nature of the characteristic in accordance with the procedures in Section IV.D. Offenders who have been assessed by the UCC to be vulnerable to the degree that multiple-cell housing would not be safe shall be placed in single-cell housing.

B. Offenders who are in safekeeping shall be designated for single-cell housing only when the need is determined by the UCC or SCC. However, when there is an immediate need to place such offenders in single-cell housing for reasons of safety or security, the decision may be made by the security shift supervisor or the ranking security officer on duty. This decision shall be confirmed during the next scheduled UCC meeting, as outlined in Section IV.D.

C. The following characteristics, an offender's perception of their own vulnerability, and any other factors or characteristics that are indicative of a need for single-cell housing due to vulnerability, shall be considered in making the discretionary determination to single-cell offenders in safekeeping:

    1. Sexual orientation issues as demonstrated by in-prison or out-of-prison behavior, for example the offender is lesbian, gay, or bisexual and is fearful of living with other offenders.

    2. A weak offender, such as an offender who is easily exploited due to age, size, developmental disability, physical weakness, and other similar traits.

3. A transgender or intersex offender who displays visible physical characteristics. A transgender or intersex offender's housing and programming assignments shall be reassessed twice per year to review any threats to safety experienced by the offender.

4. An offender may require single-cell housing on one unit, but may be designated for multiple-cell housing on another unit for specific reasons, such as:

   a. Incompatibility with other offenders;

   b. Offender request due to fear of enemies;

   c. Offender is an institutional or law enforcement informant;

   d. Offender or relative is a former law enforcement officer; or

   e. Other similar circumstances.

D. Designated Single-Cell Housing Determination Process

A two-step process shall be followed by the UCC when making the single-cell housing determination.

1. The UCC shall review the offender's classification characteristics, as indicated in Section IV.C, regarding:

   a. The severity and seriousness of the offender's characteristics.

   b. The number of characteristics associated with the offender.

   There is no requirement for a specified number of characteristics to designate single-cell housing. One or any combination of characteristics may be sufficient to designate the offender for single-cell housing.

   c. The recent activities or behavior of the offender, or other offenders, that indicate the need for single-cell housing.

2. The UCC shall then consider the characteristics in relation to the offender's current institutional record, as well as current attitude and behavior.

   The continual need for designated single-cell housing shall be determined by the next UCC that reviews the offender's case. The committee shall adhere to the two-step process outlined above.

V.  Single-Cell Designator Codes

   A.  The following is a list of single-cell designator codes that shall be used to identify offenders who are approved for single-cell housing:

      1.  CM: Single-celled for medical or mental health reasons as indicated on the HSM-18.

      2.  CI: Single-celled due to developmental disabilities (DDP offenders) as indicated on the HSM-18.

      3.  CV: Single-celled due to vulnerability as determined by the UCC.

   B.  It is the responsibility of the chief of unit classification to ensure the appropriate single-cell designator code is entered on the computer in a timely manner for each offender who requires single-cell housing, as determined by the appropriate authority. Medical single-cell codes are automated via the Health Summary for Classification computer program.

VI. The SCC shall have the authority to override UCC decisions, to include single-cell housing decisions, when such overrides are deemed by the SCC to be necessary in order to ensure safety, security, and orderly management of the offender population. However, the decision of the SCC may be appealed by the unit administration to the Departmental Review Board.

Additionally, any classification decision may be appealed by an offender through offender grievance procedures.

Brad Livingston[*]
Executive Director

---

[*] Signature on file

# Exhibit 5

A. I-60 (1) Request to offical Medical Doctor, (2) Cliny not offer (3) Liathicins

B. Current Patient Restriction ToH, Kent (9/28/2019)

et: I am suppose to get injections, and I am being held on a multiple level unit + need to walk up + down stairs to attend any gym or eat. I am not suppose to be treated if the first floor — This is the second time this has occurred (see previous grieve)
I don't be held on a bottom tier dorm but don the facility is improperly advise of/permit detroil direct that (anyway) on this unit. I will on improperly advise and I should be immediately transferred to a proper facility
— Informal Resolution — ADA-accommodation request

Who: Maj. H.O.         # 263672     Lt! Estelle (high see)

co. F-229            34 days!    no (Wrong) mc

                                            SEP 23 2019

Rooms: Your hvt re scheduled inj is for 9/25/19. I have reviewed your PULHES restrictions. You are correct on the housing restrictions. The security officers should "bring you" to the elevators. Please notify the major for any problems. I have attached your H5-18.
                                            J. Kenten

TO: 1) Medical Doctor — Estella    Date: 09/20/2019
    2) Chief Med. Officer
    3) L. Littlean, Dr. g. Nelson
CC: Estella (High See).

PIUND

8C-14

I-60
Request to Official

## Current Patient Restrictions

**Patient:** HAY, HERBERT D  **MRN:** 263672  **DOB:** 01/27/1947  **Sex:** MALE  **Race:** WHITE

| Order Provider | Section | Element | Restriction | Start Date | # Days | Exp. Date | Cont | Data | Units |
|---|---|---|---|---|---|---|---|---|---|
| UNKNOWN, UNKNOWN | I | Facility Assignment | Single Level Facility | 03/08/2014 | | | Yes | | |
| UNKNOWN, UNKNOWN | II | Bunk Assignment | Lower Only | 03/08/2014 | | | Yes | | |
| UNKNOWN, UNKNOWN | II | Extended Medical Hours | Medical Non-KOP | 03/08/2014 | | | Yes | | |
| UNKNOWN, UNKNOWN | II | Extended Medical Hours | Psych Non-KOP | 03/08/2014 | | | Yes | | |
| LAWHORN, NANCY B | II | Row Assignment | Ground Floor Only | 03/08/2014 | | | Yes | | |
| CHUKWUMERIJE, NDI | III | | 1. Medically Unassigned | 02/22/2019 | | | Yes | | |
| CHUKWUMERIJE, NDI | III | | 21a. Medical - No Humidity Extremes | 02/26/2019 | | | Yes | | |
| CHUKWUMERIJE, NDI | III | | 22. No Exposure to Environmental Pollutants | 02/26/2019 | | | Yes | | |
| CHUKWUMERIJE, NDI | III | | 23. No Work With Chemicals or Irritants | 02/26/2019 | | | Yes | | |
| CHUKWUMERIJE, NDI | | | Reviewed: No Changes Needed | 06/20/2018 | | | | | |
| CASERO, HOLLY | | | Reviewed: No Changes Needed | 08/24/2017 | | | | | |
| CHUKWUMERIJE, NDI | | | Reviewed: No Changes Needed | 11/09/2018 | | | | | |
| AVILA, FAUSTO | | | Reviewed: No Changes Needed | 03/22/2018 | | | | | |
| CHUKWUMERIJE, NDI | | | Reviewed: No Changes Needed | 09/17/2018 | | | | | |
| AVILA, FAUSTO | | | Reviewed: No Changes Needed | 06/11/2018 | | | | | |
| HARRIS, ETHA L | | | Reviewed: No Changes Needed | 07/05/2018 | | | | | |
| CHUKWUMERIJE, NDI | | | Reviewed: No Changes Needed | 05/06/2019 | | | | | |
| SUAREZ, MONICA L | | | Reviewed: No Changes Needed | 06/26/2019 | | | | | |
| CHUKWUMERIJE, NDI | | | Reviewed: No Changes Needed | 10/25/2018 | | | | | |
| RANDALL, JOVAN M | | | Reviewed: No Changes Needed | 07/15/2019 | | | | | |
| SUAREZ, MONICA L | | | Reviewed: No Changes Needed | 07/23/2019 | | | | | |
| RANDALL, JOVAN M | | | Reviewed: No Changes Needed | 07/24/2019 | | | | | |
| SUAREZ, MONICA L | | | Reviewed: No Changes Needed | 06/20/2018 | | | | | |
| ALLEN, JASON W | | | Reviewed: No Changes Needed | 08/10/2018 | | | | | |
| CHUKWUMERIJE, NDI | | | Reviewed: No Changes Needed | 12/28/2018 | | | | | |
| AVILA, FAUSTO | | | Reviewed: No Changes Needed | 04/30/2018 | | | | | |
| CHUKWUMERIJE, NDI | | | Reviewed: No Changes Needed | 02/07/2019 | | | | | |
| CHUKWUMERIJE, NDI | | | Reviewed: No Changes Needed | 01/10/2019 | | | | | |

### PULHES Management

| DESIG | CODE | MODIFIER |
|---|---|---|
| P | 3 | M | P |
| U | 2 | B | P |
| L | 1 | A | - |
| H | 1 | A | - |
| E | 2 | B | P |
| S | 2 | B | R |

*PLEASE NOTE: HSM-18 in the mainframe will be updated from these orders hourly from 6AM to 5PM*

Appendix B

Exhibit 6

1. Civil Rights (Court) Form 42 USC §1983

Holmes Darrell Adam
#2636712 (Pack Unit)
2400 Wallace Pack Rd
Navasota, TX 77868-4567

Legal
(1 of 2 envelopes)

United States Courts
Southern District of Texas
FILED

FEB 19 2020

David J. Bradley, Clerk of Court

David J. Bradley, Clerk
USDC (S.D. Tex.)
PO Box 61010
Houston, TX 77208



AFSM 4 N HOU 773
FRI 14 FEB 2020 AM